IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:16-MJ-24 |
| | ) | |
| JOSEPH HASSAN FARROKH, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR APPOINTMENT OF COUNTER-RADICALIZATION EXPERT, EVALUATION AND STUDY TO EVALUATE RISK ASSESSMENT AND RECOMMEND INTERVENTION, AND TO CONTINUE SENTENCING**

**COMES NOW** the Defendant, Joseph Hassan Farrokh, by counsel, and respectfully moves the Court to (1) appoint Daniel Koehler, Director of the German Institute on Radicalization and De-Radicalization Studies, to conduct a presentence risk assessment and recommend intervention needs for Mr. Farrokh's de-radicalization, (2) direct the U.S. Probation Office for the Eastern District of Virginia to conduct such a study and to contract with Daniel Koehler in preparing a written report containing findings and recommendations to assist this Court at sentencing, and (3) continue the sentencing, currently set for July 15, 2016, until such a time that the report and recommendations have been received and considered by this Court. Mr. Farrokh requests that the Court schedule oral argument on this motion.

In support of this motion, Mr. Farrokh submits the following:

1. Mr. Farrokh has pleaded guilty to one count of attempting to provide material support and resources to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B. Since shortly after his arrest he has been assisting the United States in

its investigation and prosecution of related offenses and agreed to continue doing so in his plea agreement. Mr. Farrokh has taken responsibility for his crime and will provide any cooperation required by the United States. He disavows ISIS and its extremist ideology, deeply regrets his crime, and wishes to participate in any counter-radicalization programming or alternative sentencing that is available to him.

2. Mr. Farrokh is twenty-eight years old, married, and will soon be a father. He is the third child in an intact, stable American family which supports him personally but rejects radical and jihadist beliefs. Although Mr. Farrokh has been a Muslim since childhood, his participation in the activity resulting in his conviction and the radical mindset that motivated his conduct is very recent and entirely out of character. Unlike many defendants charged with providing or attempting to provide material assistance to ISIS, Mr. Farrokh does not speak Arabic, has not been deeply steeped extremist or jihadist ideology, has not had an active online jihadist presence, and only recently adopted extreme views. *See, e.g., United States v. Morton*, 1:12-cr-35, Doc. 37, 6/14/12 (detailing defendant's creation of extremist webisites, three year online advocacy of jihad, and attempts to have Americans murdered); *United States v. Chesser*, 1:10-cr-395, Doc. 32, 10/20/10 (discussing defendant's multi-year activity including creating a jihadist website and blog "dedicated to those who give their blood for [Islam]" and "Destroy[ing] the West", posting videos describing how to create explosives, carrying weapons to jihadist meetings, and attempting to murder American satirists). While he remains a faithful Muslim, Mr. Farrokh recognizes that the Islamic teachings that drew him to radical ideas have been manipulated by ISIS and its sympathizers, and that he lacked sufficient experience and knowledge to discern when the Quran was being misused.

3. Undersigned counsel has researched the process of radicalization, represented hundreds of defendants charged with serious felonies including terrorism-related and gang crimes, and am generally familiar with how psychologically vulnerable individuals can be influenced or drawn into joining violent groups and committing violent crimes. In particular, I have represented numerous individuals in federal and state courts who had pre-existing grievances and vulnerabilities that made them susceptible to being brainwashed, radicalized, and/or coerced into joining gangs through a gradual process that transforms those grievances into political, cultural, religious, or existential causes. A critical step in the process of radicalization is appealing to psychologically vulnerable people by validating and politicizing their sense of grievance and then providing an increasingly extreme set of solutions. *United States v. Bell*, 2015 U.S. Dist. LEXIS 4447, *42 (M.D. Fla. 2015). The process of radicalization can range from extreme, physical inductions, as is common with gang members, to a process of self-radicalization whereby the individual's grievance is activated and politicized through more passive influences, such as books or the internet. Often the process of radicalization consists of many influences including "learned" peers, clerics, radical literature, and online media. Mr. Farrokh was exposed to many of these influences in the year leading up to his crime and now recognizes that while he is responsible for the poor decisions he made, many of his choices directly conflict with his core values and that his judgment and free will was significantly impaired.

4. Daniel Koehler is an expert consultant for Counter-Terrorism and Counter-Radicalization, for the Ministry of the Interior Baden-Württemberg, State Police

Division.[1], and the Director of the German Institute on Radicalization and De-Radicalization Studies ("GIRDS"), a non-profit initiative dedicated to the study and practice of de-radicalization and counter-radicalization processes.[2] Mr. Koehler has been designated and appointed by Hon. Michael J. Davis, District Court for Minnesota, to design a de-radicalization program in Minnesota, to train probation officers and coordinate with the probation office, and to conduct risk and de-radicalization assessments in cases involving individuals attempting to travel abroad to participate in terrorism-related activities. *United States v. Abdurahman*, Crim. No. 15-49, Order, Doc. 373 (D. Minn. March 2, 2016) (a copy of this and the related orders are attached as **Exhibit B**). Pursuant to this appointment Judge Davis has directed Dr. Koehler's assessment to

> 1. Identify and describe case specific driving factors of radicalization for the individual defendant. The assessment should include any necessary interviews with the defendant, family members, friends, teachers, and/or agents of the government and review of appropriate documentation and reports.
>
> 2. Complete risk assessment for the defendant based on a recognized, structured professional judgment assessment tools to include:
>
>> a. Level of engagement and identified engagement factors
>>
>> b. Level of intent to commit acts of violence and mental state
>>
>> c. Level of capability and capability factors to commit violence.
>
> 3. Identify level of risk of re-offending and stage of radicalization.
>
> 4. Identify specific individualized target areas for the de-radicalization process.
>
> 5. Given prognosis of possible chances of success for intervention and de-radicalization process.

---

[1] Mr. Koehler's curriculum vitae is attached as **Exhibit A**.
[2] The GIRDS website can be accessed at http://www.girds.org/.

    6. Provide a recommended disengagement and de-radicalization intervention program tailored to the individual defendant's circumstances and underlying radicalization factors.

    7. Provide an overview of a graduated phase process needed for intervention and de-radicalization of the defendant.

    8. Identify and recommend expert personnel and structure to be incorporated as part of the intervention and de-radicalization process. Provide direction on types of resources needed during the course of this process such as psychological counseling, social services, education needs, or mentoring programs.

    9. Provide estimated frequency of contacts needed by involved parties for the intervention de-radicalization of the defendant and possible duration of the process needed.

    10. Provide any additional information or necessary recommendations not already requested or provided to the Court.

*Id.* at 2-3.

    5.    Undersigned counsel has spoken with Daniel Koehler about the Minnesota de-radicalization program, designing and implementing a similar program in the Eastern District of Virginia, the feasibility of conducting an assessment on Mr. Farrokh, and working with the U.S. Probation Office to implement such a program. Mr. Koehler has informed me that he is available to assist the Court in conducting an evaluation and risk assessment, and prefers to do so under the aegis of the Court and Probation Office rather than as a defense expert. Mr. Koehler has also advised me that although he welcomes the opportunity to assist the court in this matter, he would not be available to travel to Northern Virginia until July, that the assessment of Mr. Farrokh will take one week, and assessing the feasibility of creating a program several months longer and only in consultation with the U.S. Probation Office. His professional fee is $5,000 to travel to the United States to

5

do the risk assessment for Mr. Farrokh plus travel expenses[3], and the total cost of this initial assessment would be less than $10,000.

6. Mr. Farrokh is indigent. He has no income and owns no property. Undersigned counsel has been retained by Mr. Farrokh's family.

7. Undersigned counsel also represents Ali Amin, an 18 year-old man convicted in this District of providing material assistance to ISIS in 2015. *United States v. Amin*, 1:15-cr-00164, Doc. 20. Following his arrest, Mr. Amin provided immediate and extensive cooperation to the United States, and made clear his interest in participating in counter-radicalization programs. While incarcerated at the Northern Neck Regional Jail and the Ashland Federal Correctional Institution for the past fourteen months, Mr. Amin has had no access to religious education, counter-radicalization or de-radicalization services, or any other intervention program, much less one tailored to his individual circumstances and underlying radicalization factors. Critically, there is currently no such program available in the Federal Bureau of Prisons (BOP), and undersigned counsel is unaware of any plans to create one. Simply stated, there are no services available in the BOP designed to de-radicalize even the most willing participants such as Mr. Farrokh.

8. Based on his background, individual characteristics, the recency of his adoption of radical views, and commitment to participating in de-radicalization, Mr. Farrokh is an extremely low risk of recidivism and an extremely favorable candidate for such de-radicalization. Because he has renounced ISIS, is cooperating with authorities, and has significant support in this community, Mr. Farrokh is a particularly promising

---

[3] Based on internet travel services Travelocity.com and Expedia.com, roundtrip air travel from Germany to Washington, D.C. in July, 2016, will take approximately 20 hours and cost between $900 and $1,100.

6

candidate for the services that Mr. Koehler and the U.S. Probation Office could provide.

**WHEREFORE**, for all these reasons, Mr. Farrokh respectfully requests the Court to (1) appoint Daniel Koehler, Director of the German Institute on Radicalization and De-Radicalization Studies, to conduct a presentence risk assessment and recommend intervention needs for Mr. Farrokh's de-radicalization, (2) direct the U.S. Probation Office for the Eastern District of Virginia to conduct such study and to contract with Daniel Koehler in preparing a written report containing findings and recommendations to assist this Court at sentencing, and (3) continue the sentencing, currently set for July 15, 2016, until such a time that the report and recommendations have been received and considered by this Court.

Respectfully submitted,  
Joseph Hassan Farrokh  
By Counsel

_____/s/_____  
Joseph T. Flood, VSB #71716  
Sheldon, Flood & Haywood, PLC  
10621 Jones Street, Suite 301-A  
Fairfax, VA 22030  
(703) 691-8410  
(703) 257-0252 (fax)  
jflood@sfhdefense.com

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on the 21st day of April, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Gordon D. Kromberg
Dennis M. Fitzpatrick
Assistant United States Attorneys
Justin W. Williams United States Attorney's Office 2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Gordon.Kromberg@usdoj.gov
Dennis.Fitzpatrick@usdoj.gov

                                                           /s/
                                    Joseph T. Flood, VSB #71716
                                    Sheldon, Flood & Haywood, PLC
                                    10621 Jones Street, Suite 301-A
                                    Fairfax, VA  22030
                                    (703) 691-8410
                                    (703) 257-0252 (fax)
                                    jflood@sfhdefense.com