IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) CRIMINAL NO. 1:16-cr-20-AJT |
| JOSEPH HASSAN FARROKH, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SURREPLY TO GOVERNMENT'S
MEMORANDUM IN AID OF SENTENCING**

**COMES NOW** the Defendant, Joseph Hassan Farrokh, by counsel, and, and in accordance with 18 U.S.C. § 3553(a) and § 6A1.2 of the United States Sentencing Guidelines ("U.S.S.G."), respectfully submits this surreply in response to the United States' Memorandum in Aid of Sentencing (Doc. 43), and in support of his own Memorandum in Aid of Sentencing, and the relief sought therein.

In arguing for a "substantial sentence" for Mr. Farrokh, the United States cites three cases it contends support a guideline range of 188-235 months - *United States v. Amin*, 1:15-cr-164 (E.D.Va.); *United States v. Saadeh*, 2:15-cr-558 (D.N.J.), and *United States v. Nguyen*, 2:13-cr-736. (C.D. Ca.). (Doc. 43, at 9.) While acknowledging the difficulty in assessing comparable defendants "found guilty of similar conduct is difficult" because each "case has unique features," the United States nonetheless contends these cases are "instructive". *Id.* The United States is absolutely wrong. It is neither difficult to compare nor distinguish each of these cases because there is no reasonable argument the defendant's in *Amin*, *Saadeh*, and *Nguyen* engaged in "similar conduct" to Mr. Farrokh. Each of these

defendants engaged in a far more protracted pattern of behavior, were far more radicalized, far more influential, and far more sophisticated that Mr. Farrokh. Most important, each of these individuals were active recruiters for terrorist organizations, and as such, tended to be punished significantly more harshly than defendants, such as Mr. Farrokh, who were merely recruits to the cause. As such, they are readily distinguishable and not appropriate comparison cases.

*United States v. Amin, 1:15-cr-164-CMH*

As discussed in Mr. Farrokh's Memorandum in Aid of Sentencing, *Amin* is inapposite because the defendant was an extremely sophisticated and influential blogger who operated a popular pro-ISIS twitter account he used as a platform to radicalize and recruit - by the United States' own account - thousands of followers to join ISIS and travel abroad to join the jihad. Through this medium, Amin published (1) information and several scholarly articles he authored outlining sophisticated methods of funding ISIS in Syria, (2) extensively on a multitude of subjects designed to legitimize ISIS and violent extremism, (3) well reasoned proposals for creating an official ISIS website, and advising jihadists on the best ways to travel to Syria to join the jihad, and (4) highly technical articles informing ISIS supporters how to encrypt their communications so that they can remain anonymous. Although the potential danger Mr. Amin represented was apparently quite vast, his impact was also readily identifiable in that he effectively led an American cell of ISIS supporters who he recruited and radicalized. Later he successfully dispatched one of his adherents, Reza Niknejad, to Syria, and facilitated or assisted in every aspect of his travel, both domestically and through his contacts abroad. Finally, Amin's pro-ISIS, pro-Jihadist

2

violent ideology was extremely well-developed and long-standing, and belied his relative youth. Undoubtedly, Mr. Amin was both influential and effective.

Based on the scope, impact, degree of sophistication, and effectiveness of Amin's criminal activity, there is no reasonable argument that he was guilty of similar conduct as Mr. Farrokh, who was a total newcomer to ISIS, utterly unsophisticated, and completely ineffective. Indeed, the mere fact Amin took on a role of prominence within the pro-ISIS internet community and acted as a recruiter and proselytizer, standing alone makes him significantly more culpable than mere followers, such as Mr. Farrokh, due to the greater danger he represents due to his sophistication and influence. Comparing the illegal conduct of Mr. Farrokh and Mr. Amin strongly confirms a sentence of 63 months and an accurate and appropriate assessment of his relative moral culpability.

*United States v. Saadeh,* 2:15-cr-558

*Saadeh* is likewise inapplicable due to the breadth of defendant's conduct, degree of sophistication, and his demonstrated influence in his efforts to organize a small army of ISIS fighters from New York and New Jersey to travel to Syria to join ISIS. Although Saadeh clearly intended to travel abroad to join ISIS, his criminal conduct primarily related to acting as a recruiter and leader/organizer, like the defendant in *Amin*, and facilitating his brother's overseas travel while deliberately taking steps to conceal the scheme from law enforcement. In addition, Saadeh provided financial and logistical support to facilitate his brother's travel, much like the defendant in *Amin*. In this regard, Saadeh admitted assisting his brother's *successful* travel to Syria by "letting him purchase airline tickets using Saadeh's credit card, removing the SIM card from Nader's smartphone and resetting the smartphone in an effort to avoid detection. Department of Justice Press Release, *New*

3

*Jersey Man Sentenced to 15 Years in Prison for Conspiring to Provide Material Support to ISIL*, May 10, 2016.[1] After becoming aware that his activities were under investigation by the FBI, Saadeh ordered an individual with knowledge of the conspiracy, to lie if questioned by the FBI on the subject.[2]

*Saadeh* is very similar to *Amin*, and readily distinguishable from Mr. Farrokh's case for the same reasons: he was a organizer who exerted influence on multiple individuals; he demonstrated the capacity to control and influence multiple followers; he recruited ISIS fighters; he provided logistical guidance to complete the mission; and he engaged in additional criminal conduct to avoid detection. Mr Farrokh's conduct is significantly less culpable in every regard.

*United States v. Nguyen*, 2:13-cr-736

*Nguyen* barely deserves mention because his conduct was far more elaborate, dangerous, and lethally successful than either of the defendants in *Amin* or *Saadeh*, not to mention Mr. Farrohk. Nyugen engaged in an elaborate scheme to travel abroad to join the battle against Asaad, recruit and train new fighters, and used social media to proselytize, indoctrinate and brag about his exploits. See Associated Press, "*I'm literally having a blast': What Californian Muslim convert posted on Facebook from Syria before being arrested for aiding Al-Qaeda,* Oct. 12, 2013.[3] From December, 2012 through April, 2013, Nguyen successfully travelled to Syria where he fought with opposition forces against the Assad forces and chronicled his exploits on Facebook, including bragging about registering

---

[1] This press release is available at: https://www.justice.gov/opa/pr/new-jersey-man-sentenced-15-years-prison-conspiring-provide-material-support-isil
[2] For this conduct Saadeh was charged with witness tampering in violation of 18 U.S.C. § 512(b)(3).
[3] Article available at http://www.dailymail.co.uk/news/article-2457191/Im-literally-having-blast-What-Californian-Muslim-convert-posted-Facebook-Syria-arrested-aiding-Al-Qaeda.html

his first "kill". Upon returning to the United States, Nguyen promptly attempted to recruit and train Muslims to prepare to join al-Qai'da and fight in Syria. Later, Nguyen admitted to an undercover detective that he trained fighters in Syria and had devised a battle plan for his own battalion of fighters. In discussions with the undercover, Nguyen agreed to go to Pakistan for 5-6 weeks to train 30 fighters for a guerrilla warfare ambush attack on Coalition forces. Nguyen purchased a ticket from Mexico to Pakistan and bus ticket from California to Mexico and at a bus stop in Santa Ana, Nguyen was arrested.

Further aggravating his offense is the fact that Nguyen had valuable special skills that he intended to use to advance the terrorist cause. Nguyen was licensed as a security guard and had permits for a baton and firearm. He had received special weapons training and demonstrated an intention to use his special skillset to benefit a terrorist organization. When arrested Nguyen was in possession of over 200 weapons training videos, and a fake passport. Nguyen went to extensive lengths to conceal his terrorist activity, including providing false information in application for the United States passport which he was caught with at the time of his arrest.

Unlike Nguyen, who successfully traveled abroad, took the initiative to lead terrorist fighters, killed someone on the battlefield in Syria, and in general showed an unwavering ideological commitment to terrorism, Mr. Farrokh's conduct is defined by its lack of sophistication and understanding of the "big picture". Although he wanted to travel to Syria, Mr. Farrokh continuously hesitated, failed to fully grasp what his role would be when arrived in Syria, and was purely a follower. In contrast, Nguyen continually acted on his own initiative demonstrating a purity of purpose and the ability to actualize his violent intentions. For these reasons, *Nguyen* is entirely dissimilar to Mr. Farrokh's case, and using

it as a point of comparison would distort the purpose of § 3353(a)(6), and lead to an unwarranted sentencing disparity.

\* \* \*

"Recruiters" for terrorist organizations tend to receive significantly longer prison terms than those who are merely recruited. Amin was sentenced to 136 months and Saadeh received 180, for an average sentence of 158 months. In contrast, defendants whose conduct consisted solely or primarily of being recruited to join the fight, like Mr. Farrokh, tend to receive significantly lower sentences. The average sentence for the three defendants who attempted to provide material support by attempting to go to the battlefield – Conley (60 months), Wolfe (82 months), and Warsame (92 months) – is 78 months, or about 80 less than the recruiters. For this reason, Amin and Saadeh, are useful not because they support a higher sentence for Mr. Farrokh, as the Government suggests, but the opposite because he was not a terrorism recruiter.

## CONCLUSION

For all these reasons, and those stated in his Memorandum in Aid of Sentencing Mr Farrokh respectfully requests that this Court impose a sentence of 63 months.

Respectfully submitted,
Joseph Hassan Farrokh
By Counsel

_____/s/_____
Joseph T. Flood, VSB #71716
Sheldon, Flood & Haywood, PLC
10621 Jones Street, Suite 301-A
Fairfax, VA  22030
(703) 691-8410
(703) 257-0252 (fax)
jflood@sfhdefense.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 14th day of July, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    Gordon D. Kromberg
    Dennis M. Fitzpatrick
    Assistant United States Attorneys
    Attorneys for the United States of America
    United States Attorney's Office
    2100 Jamieson Avenue
    Alexandria, VA 22314
    (703) 299-3700
    (703) 837-8242
    gordon.kromberg@usdoj.gov
    dennis.fitzpatrick@usdoj.gov

                                                                                       _____/s/_____
                                                                                       Joseph T. Flood, VSB #71716
                                                                                      Sheldon, Flood & Haywood, PLC
                                                                                      10621 Jones Street, Suite 301-A
                                                                                      Fairfax, VA  22030
                                                                                      (703) 691-8410
                                                                                      (703) 257-0252 (fax)
                                                                                      jflood@sfhdefense.com